# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12 C 5493 |
| ) | |
| HAROLD C. BECK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Harold Beck pled guilty to three counts of bank robbery. In his plea agreement and at his guilty plea hearing before Judge Rebecca Pallmeyer, Mr. Beck admitted that he robbed TCF Bank branches located in Elmhurst, Norridge, and Westchester, Illinois on, respectively, March 16, February 5, and April 8, 2008. At the time he pled guilty, Mr. Beck also stipulated that he had committed additional bank robberies on the following dates: February 4, 2007 in Franklin Park; February 10, 2007 in Chicago; July 18, 2007 in Franklin Park; November 29, 2007 in Franklin Park; December 20, 2007 in Chicago; March 13, 2008 in LaGrange Park; July 6, 2009 in LaGrange Park; August 5, 2009 in Norridge; December 7, 2009 in Elmhurst; and February 1, 2010 in Countryside. Mr. Beck expressly agreed that he had committed these robberies, agreeing with the government's summary of the facts and stating, in his own words, that "I robbed some banks, 13 banks." Nov. 16, 2010 Tr. 26. Mr. Beck also stated that he was pleading guilty voluntarily and had not been forced or threatened in any way. *Id.* 15 & 18.

The case was transferred to the undersigned judge's calendar for sentencing. At no time between the date of his guilty plea and the sentencing date did Mr. Beck indicate that he had changed his mind or wished to withdraw his guilty plea. When this Court asked at the outset of the sentencing hearing whether both sides were ready to proceed, Mr. Beck did not express any wish to put off the sentencing or withdraw his guilty plea. And when asked, prior to imposition of sentence, whether he wished to say anything, Mr. Beck said, "I don't have anything to say." Mar. 1, 2011 Tr. 27.

The Court imposed a sentence of six years, approximately the middle of the applicable advisory Sentencing Guidelines range. Mr. Beck filed a notice of appeal. On appeal, his appointed counsel, the same lawyer who had represented him in this Court, filed an *Anders* brief, and asked to withdraw. Counsel's *Anders* brief specifically stated that Mr. Beck was not seeking to withdraw his guilty plea. The Court of Appeals gave Mr. Beck a chance to respond to counsel's motion. Mr. Beck filed a response, challenging only the length of the sentence and the adequacy of this Court's reasoning in imposing sentence; he did not take issue with counsel's statement that he did not wish to withdraw his guilty plea. Mr. Beck also said, somewhat cryptically, that his counsel had "absolutely acted in good faith when he counciled [sic], and assisted me, nevertheless, he did not act on my behalf." He asked for appointment of a new lawyer.

The Court of Appeals granted counsel's motion to withdraw, denied Mr. Beck's request for a new lawyer, and dismissed his appeal. The court concluded that Judge Pallmeyer's discussion with Mr. Beck at the time of his guilty plea was sufficient to overcome any challenge that Mr. Beck might make. The court also concluded that any challenge to the sentence would be frivolous. Finally, the court declined Mr. Beck's

request for a new lawyer, saying that if he wished to challenge counsel's performance, he should do that on collateral review. See *United States v. Beck*, No. 11-1569 (7th Cir. Jan. 20, 2012).

Mr. Beck has now filed a *pro se* motion under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence. The Court grants Mr. Beck's motion to proceed *in forma pauperis*, that is, without paying the usual filing fee.

The Court has reviewed Mr. Beck's section 2255 motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, which provides that the Court must examine a section 2255 motion following receipt and must dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ."

In his motion, Mr. Beck asserts four claims. First, Mr. Beck alleges that he was deprived of his right to counsel during questioning by the police in that he was interrogated even after he asserted his right to counsel. Second, Mr. Beck alleges that he told his lawyer he wanted to withdraw from his plea agreement and instead plead guilty only to one bank robbery (the March 16, 2010 robbery) and *nolo contendere* to the other twelve other bank robberies. He says that his lawyer did not pursue this request and also did not "clearly and correctly explain the consequences of signing [a] plea agreement." Third, Mr. Beck appears to allege that his lawyer gave him bad advice about whether his admission to the ten bank robberies to which he stipulated would affect his advisory range under the Sentencing Guidelines. Fourth, Mr. Beck alleges that there was undisclosed exculpatory evidence regarding two of the three bank robberies to which he pled guilty.

Mr. Beck's claims lack merit; no response by the government is necessary. His first claim is that the police questioned him even though he had asked for a lawyer, and his fourth claim is that the government failed to disclose exculpatory evidence. By pleading guilty, however, Mr. Beck gave up the right to assert any claim that the authorities acted unconstitutionally at some earlier point in time. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). In addition, Mr. Beck's exculpatory evidence claim is entirely conclusory and unsupported; he does not attempt describe the purported evidence in question. Moreover, Mr. Beck's unequivocal admission under oath at his guilty plea hearing that he "robbed . . . 13 banks" undercuts any claim that there was undisclosed material evidence that would exculpate him.

Mr. Beck's second claim is that his lawyer refused his alleged request to withdraw his guilty plea and instead plead guilty to just one bank robbery and *nolo contendere* to the others. He says that his lawyer did not explain the consequences of signing a plea agreement. This claim is contrary to Mr. Beck's statements under oath at his guilty plea hearing before Judge Pallmeyer, during which he admitted that he had signed the plea agreement after discussing it with his lawyer and getting answers from his lawyer to all of his questions about plea agreement. *See* Nov. 16, 2010 Tr. 15-16. Statements such as these "are accorded a presumption of verity," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002) (internal quotation marks omitted), and as such "a defendant is normally bound by the representations he makes to a court during

the [plea] colloquy." *Hutchings v. United States,* 618 F.3d 693, 700 (7th Cir. 2010). In addition, Mr. Beck was not entitled simply to withdraw his guilty plea; he would have had to provide a "fair and just" reason. *See United States v. Redmond*, 667 F.3d 863, 870 (7th Cir. 2012). Because Mr. Beck provides nothing of the kind in his section 2255 motion, he has not adequately alleged that he was prejudiced by his attorney's alleged failure to carry out his claimed request. Finally, the Court notes that before accepting any sort of a *nolo* plea from Mr. Beck, the Court would have been required to consider the government's views on the appropriateness of such a plea. *See* Fed. R. Crim. P. 11(a)(2). Mr. Beck provides no basis to believe that consideration of such a plea would have survived such review.

Mr. Beck's third claim is that his lawyer gave him bad advice that his admission to the additional bank robberies would not affect his range under the Sentencing Guidelines. This claim is completely undermined by the text of Mr. Beck's plea agreement. The plea agreement clearly laid out, in detail, his admissions to each of the bank robberies; it stated that he was stipulating to those robberies "for purposes of computing his sentence under Guideline § 1B1.2"; and it described, clearly and in detail, exactly how his admissions to the other robberies affected his Sentencing Guidelines offense level. *See* Plea Agr. ¶¶ 7, 7(a)-(j) & 9(b)(iv)-(xiv). As indicated earlier, Mr. Beck admitted under oath at his guilty plea hearing that he had discussed the plea agreement with his lawyer and had gotten answers from his lawyer to any questions he had about the agreement. *See* Nov. 16, 2010 Tr. 15-16. And in the agreement itself, which Mr. Beck signed, he stated that he understood and accepted the agreement's terms. *See* Plea Agr. ¶ 30. The Court sentenced Mr. Beck within the advisory Sentencing

Guidelines range and did not further enhance the sentence based on the additional robberies. Taken together, these facts undermine Mr. Beck's claim that his lawyer had erroneously led him to believe that the additional robberies would not affect the sentence.

## Conclusion

The Court grants defendant's motion to proceed *in forma pauperis* [dkt. no. 3]. The Court denies defendant's motion for an evidentiary hearing [dkt. no. 5] and terminates as motions two documents that defendant filed in support of his section 2255 motion [dkt. nos. 6 & 7]. The Court also denies defendant's motion for appointment of counsel, because he has not shown that counsel is required to present his claims adequately [dkt. no. 4]. Finally, for the reasons stated above, the Court directs the Clerk to enter judgment dismissing defendant's motion to vacate his sentence.

_____
                            MATTHEW F. KENNELLY
                            United States District Judge

Date: October 9, 2012